IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KAROLINA OBRYCKA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 07 C 2372 |
| | ) | |
| v. | ) | Judge St. Eve |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Magistrate Judge Nolan |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION
TO BAR LOU REITER AS AN EXPERT WITNESS**

Pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and its

progeny, defendant City of Chicago moves to exclude Lou Reiter as an expert witness in this

case. For reasons explained below, Reiter's opinions are neither reliable nor relevant – the twin

standards of the admissibility of expert testimony. Accordingly, Reiter's purported expert

opinions should be rejected, and Reiter should be barred as an expert witness.

<u>**Introduction**</u>

The test for the admissibility of expert testimony in a federal trial is codified in Rule 702

of the Federal Rules of Evidence ("Testimony by Experts"):

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

1

Thus, Rule 702 requires that (1) the expert be qualified; (2) the testimony be reliable; and (3) the testimony be relevant. With regard to all expert testimony, trial judges act as gatekeepers to guarantee reliability.[1] "The insistence on reliability helps to ensure the integrity of the judicial process, and is of such transcendent importance that judges can act *sua sponte* to prohibit testimony that does not pass muster under *Daubert*."[2]

Pursuant to Fed. R. Civ. P. 26(a)(2), Lou Reiter – a professional litigation consultant on police matters – was retained by plaintiff to give expert testimony in support of plaintiff's *Monell* claim against defendant City of Chicago.[3] Reiter states that he was "retained by the Plaintiff's attorney to evaluate this current litigation from the point of view of the police Code of Silence and administrative investigations."[4] In Reiter's opinion, "the Chicago Police Department has created an organizational environment where the Code of Silence and deficient administrative investigations and disciplinary procedures are present and would allow police officers to engage in misconduct with little fear of sanction."[5]

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*).

[2] *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 318-19 (N.D.Ill. 2008) (Cole, J.) (citations omitted).

[3] Plaintiff's *Monell* claim against the City is brought in Count I of her Complaint. Plaintiff's Complaint is attached hereto as Exh. A.

[4] "Preliminary Expert Report of Lou Reiter" ("Report") at 7. Reiter's Report is attached hereto as Exh. B.

[5] *Id.* at 7.

2

Reiter's opinions, however, are neither relevant nor reliable.  As to his opinion about administrative investigations, Reiter reviewed only four complaint register files,[6] while ignoring the more than 800 complaint register files produced by the City in this case.  Reiter's *de minimis* sample is an insufficient basis for him to offer a reliable opinion about the City's administrative investigations, and in light of the standards of proof for section 1983 municipal liability, Reiter's minuscule sample of complaint register files is so patently small as to render his opinions irrelevant to this case.

As to his opinion about a Code of Silence, Reiter's handful of "indicators" of a Code of Silence in the Chicago Police Department also is a *de minimis* sample, and therefore an insufficient basis for him to offer a relevant and reliable opinion about this issue.  In addition, Reiter's evidentiary basis to support his conclusions is unreliable because he adopts the opinions of plaintiff's counsel, and his evidence are not findings that are the product of his own objective and independent investigation.  Accordingly, this court should bar Reiter as an expert witness.

## <u>Argument</u>

I.   *Reiter should be excluded as an expert because his opinions about the City's administrative investigations are irrelevant and unreliable.*

After he was retained as an expert, Reiter reviewed four CR files in the course of formulating his opinions in this case.  Three of these files concerned Anthony Abbate and pre-dated the incident with plaintiff.  The fourth investigative file concerned the response of two police officers to plaintiff's call for service following the incident.  For an administrative investigation to be evidence of a municipal practice of deficient investigations that caused the

---

[6]A "complaint register" (or "CR") file is a compilation of documents related to the City's internal investigation of allegations of misconduct against its police officers.

incident in question, the conduct under investigation must have occurred before that incident. Hence, because the fourth investigative file involves conduct that post-dates the incident, it is irrelevant to plaintiff's *Monell* claim. Consequently, Reiter reviewed only three CR files for this case, despite the fact that the City produced more than 800 CR files to plaintiff in discovery.

Based on his analysis of these CR files, Reiter concludes the following regarding the City's administrative investigations: (1) the results of these investigations "favored the officers and precluded any meaningful investigation and, ultimately, any discipline"[7]; (2) these observations are similar to those that he has made in past cases involving the Chicago Police Department[8]; and (3) these observations "have assisted me in creating an opinion that this is a historical, systemic deficiency."[9] In other words, Reiter concludes that the deficiencies in the City's administrative investigations are longstanding and pervasive as a result of his analysis of three pertinent CR files.

Reiter's conclusions are unreliable on their face. The link between his conclusion about the three pertinent CR files that he reviewed and his conclusion about the City's administrative investigations on a systemic basis is that the observations about the former are similar to those that he has made in past cases involving the Chicago Police Department. However, Reiter provides absolutely no information concerning his observations made in past cases, and therefore

---

[7]Report at 16.

[8]*Id.*

[9]*Id.*

analysis

no evidence to support these observations.[10]  Due to this missing link, there is no reason to believe Reiter's opinions about "a historical, systemic deficiency" within the City's investigatory and disciplinary process.

Moreover, as a matter of law, three incidents are insufficient evidence to establish the existence of a widespread practice of deficient administrative investigations.  Proof of the existence of a deficient municipal practice is the first requirement that a plaintiff must satisfy to establish municipality liability under section 1983.

> . . . in *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. . . . an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that *the relevant practice is so widespread as to have the force of law.*[11]

In *Phelan v. Cook County*, the Seventh Circuit explained the meaning and significance of the term "widespread" in defining a practice that is actionable under section 1983:

> [b]oth in the "widespread practice" implicit policy cases and in the cases attacking gaps in express policies, what is needed is evidence that there is a true municipal policy at issue, not a random event.  Thus, we have declined to find that an alleged widespread practice could evince a true municipal policy where the plaintiff

---

[10]Reiter correctly notes that he was retained by plaintiffs as a police practices expert in *Arias v. City of Chicago* (05 C 5940), in which he reviewed approximately 300 CR files. However, Reiter fails to indicate the findings of his review of these files, or to state that the administrative investigations in question all involved sexual misconduct and were conducted by IAD.  The latter fact is significant because plaintiff in this case requested more than 800 files – presumably the relevant sample – concerning the use of excessive force, all of which would have been investigated by OPS.  Reiter also fails to note that the incidents in question in *Arias* allegedly took place on November 30, 2004 and May 24, 2005.  Hence, the CR files that Reiter reviewed involved incidents that occurred before the incidents in *Arias* by several years, and predated the Abbate/Obrycka incident by an even longer period of time.

[11]*Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citations omitted) (emphasis added).

introduced evidence that on three separate occasions prison guards improperly sprayed inmates with pepper spray. Similarly, we rejected a plaintiff's attempt to demonstrate a widespread practice amounting to a policy where the plaintiff introduced evidence of two situations in which the prison had placed black inmates in "gladiator cell blocks" that posed a threat to their safety. *The unifying theme in these decisions is the acknowledgment that the word "widespread" must be taken seriously. It is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once. The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision.*[12]

As explained above, Reiter reviewed only three pertinent complaint register files in formulating his opinions in this case. Even if one assumes that these three investigations were inadequate, they do not constitute a widespread practice of deficient investigations as "practice" is defined by the Seventh Circuit. If the word "widespread" is taken seriously, three instances from among almost a thousand investigations is negligible evidence that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." Rule 702 requires that expert testimony must be relevant – that is, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." The sample of investigative files that Reiter reviewed is so minuscule that he fails to satisfy the relevancy requirement of Rule 702. Accordingly, Reiter should be excluded as an expert.[13]

---

[12]*Phelan v. Cook County,* 463 F.3d 773, 789 (7th Cir. 2006) (emphasis added).

[13]Reiter states that Whitman's report "further supports [his] observations." Report at 18. According to Reiter, "Dr. Whitman found that the sustained rate of CR investigations for Chicago police officers was extremely low." *Id.* In a separate motion, the City has moved to exclude Whitman as an expert witness in part because of flaws in the very statistical analysis that Reiter endorses. Thus, to the extent that this court bars Whitman on these grounds, it should reject Reiter's opinions.

II.    *Reiter should be excluded as an expert because his opinions about the City's so-called Code of Silence are irrelevant and unreliable.*

Reiter defines the Code of Silence as "a reluctance for persons to come forward with negative information about another person."[14]  In his Report, Reiter identifies six "indicators" of the Code of Silence that "occurred in this case."[15]  Otherwise, he provides no evidence that the Code of Silence exists among Chicago police officers.  Thus, Reiter's opinions lack proof of a police Code of Silence on a widespread basis, as a section 1983 plaintiff must provide in order to establish a municipal practice.

In addition, Reiter's opinions are unreliable because they adopt the opinions of plaintiff's counsel, and are not findings that are the product of his own objective and independent investigation.  On May 28, 2009, Mr. Ekl sent to Reiter via email an "Attorney's Outline of Facts."[16]  Prior to May 28, 2009, Reiter had not shared with Ekl his preliminary opinions regarding the case "because I didn't have any at that point."[17]  Thus, prior to drafting his report, Reiter had been provided with the Attorney Outline.

The Attorney Outline is not a comprehensive or neutral presentation of the case.  Rather, it is plaintiff's version of select facts and issues culled from the evidentiary record identified by

---

[14]*Id.* at 18.

[15]*See* Report at 23-25.

[16]*See* email from Terry Ekl to Lou Reiter, dated May 28, 2009 (attached hereto as Exh. C).  The attached "Expert Discovery: Outline of Issues and Record Citations" is printed on the letterhead of EklWilliams PLLC, plaintiff's Counsel.  This document is attached hereto as Exh. D and henceforth will be referred to as "Attorney Outline."

[17]Transcript of Deposition of Lou Reiter, dated November 10, 2009 ("Deposition"), at 25.  This excerpt from Reiter's deposition transcript is attached hereto as Exh. E.

her counsel as relevant and material to "expert discovery." The one-sided nature of this

document is illustrated by, among other things, the three main parts into which it is divided:

- I. The City of Chicago Police Department has a de facto municipal policy so widespread as to have the force of law that amounts to a Code of Silence;

- II. The City of Chicago has a de facto municipal policy so widespread as to have the force of law of protection of officer misconduct from scrutiny or consequence through inadequate investigation and discipline of officer misconduct; and

- III. Direct evidence of Abbate's Subject Belief of Impunity for his Conduct.[18]

For purposes of this motion, the most significant portion of the Attorney Outline are the

following references::

1. Excerpt from 911 call identifying Abbate by name and indicating he is a police officer;

2. Video/audio inside the bar indicating that responding officers Knickrehm and Masheimer indicating that the person who beat plaintiff was a police officer, the bar had a video surveillance system and that "everything is in the camera", and that neither of these facts was recorded in the police report completed by the responding officers;

3. Subheading under "Anecdotal Evidence in this case" entitled "Intentionally Inadequate efforts to locate, question and arrest [Anthony Abbate], despite allegations that he was intimidating and threatening witnesses.[19]

---

[18]Attorney Outline at 1, 8, and 9.

[19]Attorney Outline at 1-5, 9.

8

The import of these references is that Reiter was aware of them prior to drafting and submitting his written report, and he adopted them as his own "indicators" of a Code of Silence opinions in that report. Among the indicators described in Reiter's Report are the following:

- "The initial indicator was the initial 911 report to Chicago dispatch. Police dispatch operators are trained to be alert to the totality of the call for service from a diizen. They are trained to ensure that relevant information nis passed on to the assigned and responding police units. The transcript of Ms. Obrycka's 911 call is specific to information that the subject of the call might have been a police officer. . . . This information was not transmitted to Officers Knickrehm and Masheimer. In my opinion, this would not have been an oversight for any reasonably trained police dispatcher. More reasonable would be that the dispatcher did not want to make a record that a police officer might be in some form of trouble."[20]

" - "The second indicator in this case that the Code of Silence occurred was the conscious choices made by Officers Knickrehm and Masheimer. The record in the transcription of the bar videotape is clear that the officers were told that "Tony" was known to be a police officer. They were also told that the bar had a security videotape that may have captured the incident. The officers failed to note either of these significant evidentiary facts in their report."[21]

- "A fourth indicator is the perfunctory attempt by Internal Affairs to locate Officer Abbate once it was established he was the subject of the assault of Ms. Obrycka."[22]

- "A fifth indicator was the allegations that Officer Abbate and others were attempting to retaliate against Ms. Obrycka and the bar

---

[20]Report at 23.

[21]*Id.* at 23-24.

[22]*Id.* at 24.

> in an attempt to have the charges dropped against Officer Abbate."[23]

Thus, for select "facts" identified by plaintiff's counsel to Reiter before he drafted his report, there is a corresponding Code of Silence indicator in Reiter's report.

Following *Sommerfield v. City of Chicago*, this court should exclude Reiter as an expert witness as to the existence of a "code of silence" in the Chicago Police Department. In *Sommerfield*, the court held that the expert's opinions lacked sufficient indicia of reliability because they were based exclusively on the plaintiff's and his attorney's version of the facts. The only documents that plaintiff's expert reviewed in order to prepare his report were the plaintiff's Second Amended Complaint and the summary of depositions by the plaintiff's lawyer. According to the court,

> Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate *Daubert's* insistence that an expert's opinion be grounded on reliable information. This conclusion follows from a number of separate but related principles, perhaps the most critical of which is the partisan role lawyers play in our adversary system. Indeed Judge Posner has said that "'[expert witnesses] are the mere paid advocates or partisans of those who employ and pay them, *as much so as the attorneys who conduct the suit*.'"[24]

The partisan role of the lawyer "is incompatible with the neutrality and evenhandedness that are necessary if a summarization of deposition testimony is to have the reliability that *Daubert* demands."[25] "Here, the expert is assuming that the selected version has been accurately reported

---

[23]*Id.*

[24]*Sommerfield*, 254 F.R.D. at 321 (quoting *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.2d 370, 382 (7th Cir. 1986) (emphasis supplied by court).

[25]*Sommerfield*, 254 F.R.D. at 322.

by the lawyer of the party employing him, *and no case permits that*."[26]  As the court in *Sommerfield* concluded, to make the expert the mouthpiece of the lawyer, and to allow him to testify as to conclusions he has reached on the basis of a highly filtered version of events, is unacceptable.[27]

The reasoning employed in *Sommerfield* applies to this case, only more so.  Unlike in *Sommerfield*, where plaintiff's attorney purported to summarize the deposition testimony of third-parties, the statements at issue in the Attorney Outline indisputably are the assertions of the attorney himself.  Moreover, no attempt is made to disguise that these statements are plaintiff's version of the case, while presumably in *Sommerfield* the deposition summarizes were presented as the version of events of the witnesses who were deposed.  Thus, the select "facts" in the Attorney Outline are partisan in the most naked form, therefore undermining any semblance of the reliability that Rule 702 and *Daubert* require.  In addition, the untrustworthiness of Reiter's opinions is heightened by his uncritical reliance on the "facts" selected by the plaintiff's lawyer. In short, Reiter in his expert report merely reiterates under the rubric of indicators of a Code of Silence certain "facts" selected by plaintiff's attorney, and for this reason, he should be barred as an expert witness as to his opinions related to the "code of silence."

<u>**Conclusion**</u>

For the reasons explained above, Reiter's opinions in this case cannot survive scrutiny for reliability and are singularly unhelpful to the trier of fact.  Consistent with Rule 702 and

---

[26]*Id.* at 321 (original emphasis).

[27]*See id.* at 324.

11

"*Daubert's* uncompromising insistence that expert testimony must be reliable,"[28] this court

should exercise its gatekeeping responsibility and exclude Reiter as an expert witness.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the City of Chicago

**/s/ GEORGE J. YAMIN, JR.**
Attorney for Defendant City of Chicago

30 North LaSalle Street - Suite 1720
Chicago, Illinois 60602
(312) 744-0454
Atty. No. 06217483

---

[28]*Sommerfield*, 254 F.R.D. at 320.

12