# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 2372 | **DATE** | 7/5/2011 |
| **CASE TITLE** | Obrycka vs. City of Chicago | | |

**DOCKET ENTRY TEXT**

The Court denies Defendant City of Chicago's Motion to Bar Lou Reiter [272].

■ [ For further details see text below.]                                         Notices mailed by Judicial staff.

## STATEMENT

Before the Court is Defendant City of Chicago's motion to exclude the expert testimony of Lou Reiter pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). For the reasons discussed below, the Court denies Defendant's motion.

## INTRODUCTION

On April 30, 2007, Plaintiff Karolina Obrycka ("Plaintiff") filed the underlying lawsuit against Defendants City of Chicago ("City"), Anthony Abbate, Jr., Gary Ortiz, and Patti Chiriboga for violating her First and Fourteenth Amendment rights.[1] Plaintiff also brings a *Monell* claim against the City. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff alleges that on the night of February 19, 2007, while working as a bartender/waitress at Jesse's Shortstop Inn in Chicago, Defendant Officer Abbate – an off-duty Chicago police officer who had been drinking at the bar that evening – approached Plaintiff after she refused to serve him additional alcoholic beverages. With no warning, Defendant Officer Abbate proceeded to viciously beat, kick, and punch Plaintiff. Plaintiff alleges specific facts which, she contends, unequivocally demonstrate that the City conducted a sham investigation into the incident, in bad faith, and designed to protect Defendant Officer Abbate. She also alleges facts which, she argues, demonstrate that other City employees – including other Chicago police officers – conspired to prevent her from filing charges against Defendant Officer Abbate or from otherwise bringing the alleged misconduct to light.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

---

[1] Pursuant to the parties' stipulated agreements, Gary Ortiz and Patti Chiriboga are no longer defendants in this lawsuit. *See* R. 241, 12/2/2009 Order (dismissing Gary Ortiz without prejudice); R. 262, 9/2/2010 Order (dismissing Patti Chiriboga with prejudice).

In Plaintiff's *Monell* claim, she contends, *inter alia*, that the City has *de facto* policies and practices of concealing officer misconduct, of failing to sufficiently investigate allegations of officer misconduct, and of investigating complaints against off-duty police officers differently than it investigates complaints against other citizens. In her *Monell* claim, Plaintiff also alleges that a "code of silence" exists within the Chicago Police Department ("CPD") whereby officers conceal each others' misconduct, in contravention of their sworn duties. Plaintiff claims that all of these policies, practices and customs, individually and collectively, encourage Chicago police officers – and, specifically in this case, Defendant Officer Abbate – to engage in misconduct with impunity and without fear of official consequences.

Plaintiff has proffered Lou Reiter to provide expert testimony in support of her *Monell* claim against the City. Reiter is a former member of the Los Angeles Police Department who now provides consultation services, audits, and training for law enforcement agencies throughout the nation. Plaintiff specifically retainer Reiter to opine on the existence and impact of a code of silence within the CPD, and to evaluate her case "from the point of view of the police Code of Silence and administrative investigations." (R. 272-1, Mot. to Bar Reiter-Ex. B ("Reiter Rept."), at 7.[2]) Based on Reiter's "specialized knowledge, skills and training," coupled with his "continuous review of documents and testimony from the CPD over the past 20 years and the discovery in this case," he opines that "the CPD has created an organizational environment where the Code of Silence and deficient administrative investigations and disciplinary procedures are present and would allow police officers to engage in misconduct with little fear of sanction. This adverse environment . . . is the product of acts and/or omissions by the Police Department to conduct itself in a manner contrary to reasonable and generally accepted police practices." (*Id*.) Reiter also opines that the CPD has had "historical and ongoing problems in its complaint process, administrative investigations and discipline." (*Id*. at 10.) From the CR files Reiter analyzed in this case, he concludes that the City's administrative investigations "favored the officers and precluded any meaningful investigation and, ultimately, any discipline." (*Id*. at 16.) Reiter states:

> "These observations were similar to those I've made in past cases involving the Chicago Police Department and have assisted me in creating an opinion that this is a historical, systemic deficiency. These deficiencies are contrary to the generally accepted practices for this essential aspect of police control, monitoring and accountability. The investigations appeared to be very pretextual with the apparent ultimate mission to discredit the complainant rather than conduct a reasonable search for the truth of the allegation(s). The deficiencies I observed within these files allow me to opine that any reasonable officer on the Chicago Police Department during this period of time would reasonably believe that they would not be disciplined or sanctioned in any meaningful manner for misconduct involving their actions with citizens." (*Id*.)

The City makes four arguments to challenge the admissibility of Reiter's opinions under Rule 702. First, it argues that Reiter's opinion about the City's administrative investigations is unreliable because he relies on a "*de minimis* sample" of Complaint Register[3] ("CR") files. Second, the City contends that Reiter's opinion as to the deficiencies in the City's administrative investigations is inadmissible because it is insufficient to prove Plaintiff's *Monell* claim. Third, the City contends that Reiter's conclusions about the existence and impact of a code of silence within the CPD are unreliable because they are based on insufficient data. Last, the City alleges

---

[2] For ease of reference for the remainder of this litigation, the Court will cite to the page numbers in Reiter's expert report rather than to the page numbers on the Docket.

[3] A Complaint Register ("CR") file is a compilation of documents related to the City's internal investigation of allegations of misconduct against its police officers. (R. 272, Mot. to Bar Lou Reiter, at 3 n. 6.)

that Reiter impermissibly adopts Plaintiff's counsel's conclusions about the code of silence rather than rendering his own independent, objective observations.

Having carefully reviewed Reiter's report, the parties' briefs, and the transcript of Reiter's November 10, 2009 deposition, the Court denies the City's motion.

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "The Federal Rules of Evidence define an 'expert' as a person who possesses 'specialized knowledge' due to his 'skill, experience, training, or education' that 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Banister v. Burton,* 636 F.3d 828, 831 (7th Cir. 2011) (quoting Fed. R. Evid. 702). Rule 702 also requires that: (1) the testimony must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case. *Zamecnik v. Indian Prairie Sch. Dist. No. 204,* 636 F.3d 874, 881 (7th Cir. 2011) (quoting Fed. R. Evid. 702).

"The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). District courts must employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *See Myers v. Illinois Central R.R. Co.,* 629 F.3d 639, 644 (7th Cir. 2010); *see also United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) ("To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."). As the Seventh Circuit instructs, "'[t]he focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate.'" *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

"Rule 702 allows a witness to be 'qualified as an expert by knowledge, skill, *experience*, training, or education. . . . An expert's testimony is not unreliable simply because it is founded on his experience rather than on data." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (emphasis in original) (quoting Fed. R. Evid. 702). Indeed, "[i]n certain fields, experience is the predominant, if not the sole basis for a great deal of reliable expert testimony." Advisory Committee's Notes to Rule 702. To be sure, district courts must still "ensure that the expert testimony at issue both rests on a reliable foundation and is relevant to the task at hand." *Trustees of Chicago Painters & Decorators Pension, Health & Welfare v. Royal Int'l Drywall & Decorating, Inc*., 493 F.3d 782, 787 (7th Cir. 2007) (quoting *United States v. Cruz-Velasco*, 224 F.3d 664, 660 (7th Cir. 2000) (internal quotation and citation omitted)). As the Seventh Circuit has repeatedly recognized, however, "while extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Id*. at 787-88 (citations and quotations omitted); *see also Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Ultimately, "[t]he proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis,* 561 F.3d at 705.

# ANALYSIS

Plaintiff retained Lou Reiter as an expert on police practices, to opine on the existence and impact of a code of silence within the CPD. Although the City does not contest Reiter's qualifications on this subject matter, they bear noting.[4] Reiter has an impressive background that includes twenty years as a member of the Los Angeles Police Department ("LAPD"), where he began as a police officer and retired as the Deputy Chief of Police. (R. 284-1, Pl.'s Mot. in Opp.-Ex.A ("Reiter CV"), at 5.) Since retiring from the LAPD, Reiter has served as the principal consultant in a consulting firm he founded, Lou Reiter & Associates. There, he works with law enforcement agencies, governmental entities and academic facilities throughout the country to provide three primary services: training, agency audits, and litigation services. (*Id*. at 2.) Reiter's presentations and trainings focus on issues including "[m]anaging the Internal Affairs function, police discipline and the citizen complaint process," "[i]nvestigative procedures and supervision," supervisory techniques, policy and procedure development and personnel practices. (*Id*.) Reiter also conducts law enforcement agency audits nationwide, in which his primary areas of focus are citizen complaint procedures, discipline, internal affairs and early warning systems, police department governance, training, and the development of policies and procedures. (*Id*. at 3-4.) Reiter has consulted for the Civil Rights Division of the U.S. Department of Justice on "pattern and practices investigations" in six major cities in the United States since 1996. (*Id*. at 3.) Reiter has acted as a consultant and an expert witness for both plaintiffs and defendants in state and federal civil lawsuits involving police departments and police misconduct, including several cases in this District.

In order to prepare his expert report in this case, Reiter reviewed pleadings, relevant materials the City produced during discovery, fifteen party and non-party deposition transcripts, CPD General Orders, CPD's Office of Professional Services ("OPS") Standard Operating Procedures manuals, and materials Plaintiff's counsel tendered to him. (Reiter Rept., at 3-4.) Reiter bases his opinions "upon the totality of [his] specialized knowledge in the field of police practices," which is "derived from [his] personal police experience, knowledge and training." (*Id*.) As Reiter states, "[t]he body of knowledge that I have reviewed over the years coupled with my personal and professional experiences, my continued auditing of police agencies, my constant training of police supervisors, managers and executives, my continuous interaction with other police professionals, organizations and training personnel, all form the foundation for the opinions I am rendering in this matter." (*Id*. at 4-5.) In addition to the case-specific material he reviewed, Reiter also has had involvement with more than 15 civil litigation matters concerning the CPD over the last two decades, which have familiarized him with many of the issues that arise in this case – i.e., CPD's disciplinary process, OPS and internal affairs departments, and the citizen complaint process. (*Id*. at 6.) Against this backdrop, the Court considers the City's arguments.

I. **Reiter's Conclusions Regarding (i) The Deficiencies in the City's Administrative Investigations & (ii) The "Code of Silence" Are Admissible and Relevant**

The City argues that Reiter's opinions about the deficiencies in the City's administrative investigations into police misconduct are irrelevant and unreliable. (Mot. to Bar Reiter, at 3-4.) Neither argument prevails. As an initial matter, the City's contention that Reiter based his opinions in this case only on a handful of CR files is disingenuous. In the first pages of Reiter's expert report, he cites a comprehensive list of the items he reviewed in preparing his opinions, and explicitly acknowledges throughout his report that his conclusions are further informed by his extensive professional experience in these matters. Indeed, in the specific opinion the City identifies in this argument, *see* Reiter Rept. at 16, Reiter references not just the CR files he reviewed in this case,

---

[4] This is especially true because of the City's attempts, in its briefs, to mischaracterize the basis for Reiter's opinions in this case. The Court will address those below.

but the work he has done in previous cases involving the CPD. (*Id.*) Reiter's extensive personal knowledge, experience and training, as well as the work he undertook to prepare his expert report for this case, provides "a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert*, 509 U.S. at 592. The jury will make the ultimate decision of whether Reiter is "credible or whether his . . . theories are correct" "after opposing counsel has been provided the opportunity to cross-examine [Reiter] regarding his conclusions and the facts on which they are based." *Smith*, 215 F.3d at 719; *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful jury instruction . . . are the traditional and appropriate means of attacking shaky but admissible evidence."); *Metavante Corp.*, 619 F.3d at 762.

Because the City relies on a similar, albeit undeveloped, argument in asking the Court to exclude Reiter's "code of silence" opinions, *see* R. 272 at 7, it too fails.

## II.     Reiter's Opinions Need Not Prove Plaintiff's *Monell* Claim

The City argues that Reiter cannot testify to the "widespread practice of deficient investigations" that Plaintiff must establish in order to succeed on her *Monell* claim because he did not review a sufficient number of complaints. (*Id.* at 5.) The City makes an identical argument regarding Reiter's conclusions regarding the code of silence. (*Id.* at 7.) As the Court has explained in each of the City's other *Daubert* motions in this case, the City's suggestion that Reiter's opinions are only admissible if they meet the burden of proving Plaintiff's *Monell* claim has no support in the law. The Seventh Circuit has clearly stated that "in order for an expert's testimony to qualify as 'relevant' under Rule 702 it must assist the jury in determining *any* fact at issue in the case." *Smith*, 215 F.3d at 720 (emphasis added). "No one piece of evidence has to prove every element of plaintiff's case; it need only make the existence of 'any fact that is of consequence' more or less probable." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 425 (7th Cir. 2000) (citing Fed. R. Evid. 401). The City's argument fails.

## III.    Reiter Did Not Adopt the Opinions Of Plaintiff's Counsel

The City's final argument to exclude Reiter's expert opinions in this case asserts that Reiter's opinions are unreliable because "they adopt the opinions of plaintiff's counsel, and are not findings that are the product of his own objective and independent investigation." (Mot. to Bar Reiter, at 7.) The evidence does not support the City's claim.[5] Reiter's expert report and his deposition testimony demonstrate that his opinions are grounded in his significant personal experience and knowledge as well as from his review of the materials related to this case. Furthermore, testimony that the City elicited at Reiter's deposition contradicts the City's claim. At his deposition, the City questioned Reiter about email communications he had with Plaintiff's counsel, in which Plaintiff's counsel asked him to consider inserting additional information – from another of Plaintiff's experts' reports – into his report. Reiter rejected Plaintiff's counsel's request, and questioned the reliability of the findings

---

[5] The City has raised identical objections in connection with each of its motions to exclude Plaintiff's proffered experts in this case. Their argument prevailed as to one of the experts, Dr. Peter Manning. Unlike Reiter, however, Dr. Manning had no relevant personal knowledge or experience with the CPD, cited directly to the attorney-prepared outlines in his expert report, quoted nearly verbatim the evidence summarized in the attorney-prepared outlines, and made no efforts to either verify Plaintiff's counsel's assertions or independently inform his understanding of the context in which Plaintiff arrived at her conclusions. (R. 325, 6/2/2011 Order.)

and conclusions that Plaintiff's expert presented.[6] (R. 329, Reiter Dep. Transcr., 95:8-96:25.) This is not the behavior of someone who is simply "adopting" or "parroting" Plaintiff's counsel's opinions in his report. The Court rejects the City's suggestion.

## CONCLUSION

For the reasons discussed above, the Court denies the City's Motion to Bar Lou Reiter.

---

[6] The conclusions that Reiter questioned came from Steven Whitman's expert report. In a recent ruling, the Court excluded those opinions. *See* R. 347 (6/29/11 Mem. Op. & Order).