## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KAROLINA OBRYCKA,        )
         )
       Plaintiff,    )
         )
      v.        )    Case No.  07 C 2372
         )
CITY OF CHICAGO and ANTHONY   )
ABBATE, JR.,        )
         )
     Defendants.   )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiff Karolina Obrycka's motion in limine in which she seeks to bar certain aspects of the expert opinion testimony of Matthew J. Hickman, Ph.D., pursuant to Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993).  If permitted to testify, Defendants anticipate that Dr. Hickman would offer expert testimony on the lack of scientific validity in the study conducted by Plaintiff's expert witness Dr. Whitman.  As explained in detail below, the Court grants in part and denies in part Plaintiff's *Daubert* motion as to Dr. Hickman.[1]

## BACKGROUND

On April 30, 2007, Plaintiff Karolina Obrycka brought a five-count Complaint alleging that Defendants City of Chicago and former Chicago police officer Anthony Abbate, Jr.

---

[1]  Plaintiff filed the present *Daubert* motion on July 20, 2012, although on November 4, 2010, the Court ordered that all *Daubert* motions were due on or before November 9, 2010.  (R. 269.)  For the sake of completeness, however, the Court will address Plaintiff's late-filed *Daubert* motion.  *See Dotson v. Bravo,* 321 F.3d 663, 667 (7th Cir. 2003) (federal courts have inherent authority to control their own dockets).

violated her constitutional rights in relation to an incident on February 19, 2007 at Jesse's Shortstop Inn in Chicago, Illinois and the subsequent investigation into that incident. In particular, Obrycka maintains that the *de facto* policies of the City of Chicago – through the conduct of members of the Chicago Police Department's ("CPD") Office of Professional Standards and the CPD's Internal Affairs Division in impeding and interfering with the investigation of police misconduct, including police brutality – deprived her of her Fourteenth Amendment substantive due process liberty interest in bodily integrity. *See Monell v. Department of Soc. Servs. of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Obrycka seeks to establish her *Monell* claim by presenting evidence that the City has a well-settled, widespread practice or custom of impeding and interfering with police misconduct investigations. Moreover, Obrycka argues that there is an attendant "code of silence" that exists within the CPD, whereby officers conceal each other's misconduct in contravention of their sworn duties. Obrycka maintains that this *de facto* policy and the code of silence are evidenced and caused by the CPD's failure to: (1) sufficiently investigate allegations of police misconduct; (2) accept citizen complaints against police officers; (3) promptly interview suspected officers or take witness statements and preserve evidence; (4) properly and sufficiently discipline officers; and (5) maintain accurate and complete records of complaints and investigations of misconduct. Obrycka also contends that the CPD fabricates exculpatory evidence or destroys evidence when investigating citizen complaints against its police officers. Further, Obrycka maintains that this *de facto* policy and the code of silence encourage Chicago police officers to engage in misconduct with impunity and without the fear of official consequences.

In support of her *Monell* claim at summary judgment, Obrycka presented the testimony of Dr. Steven Whitman, who is her expert statistician. Dr. Whitman opined that based upon his statistical analysis of the rates of sustained findings in force-related complaints for Chicago police officers from 1999 through 2004, as well as specific data rates for the 25th District – where the incident at issue occurred – and the 11th and 20th Districts – in which Defendant Abbate had worked in the five years prior to 2007, the sustained rates for force-related complaints against Chicago police officers over the eight years prior to 2007 were statistically significantly lower than the national average sustained rates reported in the Bureau of Justice Statistics "Citizens Complaints About Police Use of Force Report" for the national average for all departments (8%) or the national average for larger departments like Chicago (6%). More specifically, the average sustained rate within the CPD was as low as 0.5% in 2004. Dr. Whitman also observed that in the 25th District from January 2005 through February 2007, not one of the 147 excessive force complaints was sustained, and in the 11th and 20th Districts, the sustained rate was only 1.2%.

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in Daubert[.]" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999)); *see also Lapsley v. Xtek, Inc.*, ___ F.3d ___, 2012 WL 3055865, at *1 (7th Cir. July 27, 2012) ("The purpose of [the

*Daubert*] inquiry is to vet the proposed testimony under Rule 702's requirements that it be "based on sufficient facts or data," use "reliable principles and methods," and "reliably appl[y] the principles and methods to the facts of the case.") (quoting Fed. R. Evid. 702)).  Whether to admit expert testimony rests within the discretion of the district court.  *See General Elec. Co. v. Joiner*, 522 U.S. 136, 142, 118 S. Ct. 512, 139 L.Ed.2d 508 (1997); *Lapsley*, 2012 WL 3055865, at *6 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'") (citation omitted).  "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence.  *Lewis*, 561 F.3d at 705.

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *see also Ortiz v. City of Chicago*, 656 F.3d 523, 526 (7th Cir. 2011).

District courts employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue.  *See Myers v. Illinois Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir.

2010). "The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" so as to be deemed reliable enough to present to a jury." *Lapsley*, 2012 WL 3055865, at *1 (quoting *Kumho Tire Co.*, 526 U.S. at 152).

## ANALYSIS

### I.    Dr. Hickman's Qualifications

Defendants properly designated Matthew J. Hickman, Ph.D. as an expert in the fields of statistics and criminology pursuant to Federal Rule of Civil Procedure 26(a)(2). Dr. Hickman has a Ph.D. in Criminal Justice from Temple University, a Masters degree in Criminal Justice from Washington State University, and a Bachelors degree in Criminal Justice from George Washington University. Presently, Dr. Hickman is an Assistant Professor in the Department of Criminal Justice at Seattle University where he teaches undergraduate and graduate level classes in statistics, research methods, criminology, forensic science, ethics, and crime mapping.

Prior to joining the faculty at Seattle University, Dr. Hickman was a statistician at the Bureau of Justice Statistics ("BJS"), at the United States Department of Justice. Dr. Hickman has co-authored books, including Police Integrity and Ethics (2004) and Forensic Science and the Administration of Justice (contracted). During the last ten years, Dr. Hickman has conducted research in criminology and statistics and has published numerous articles, many of which were published in peer-reviewed journals, including the *Journal of Quantitative Criminology*, *Criminology & Public Policy*, *Sociological Methods & Research*, *Police Quarterly*, and the *Journal of Criminal Justice*. Dr. Hickman has also published chapters in books, such as "Integrity in Policing" in the Encyclopedia of Police Science, 3rd Edition (2006).

While at the BJS, Dr. Hickman authored a report entitled "Citizen Complaints about Police Use of Force" presenting 2002 data collected from law enforcement agencies having 100 or more officers. In his expert report, Dr. Hickman explained that he generated this study as part of the BJS' portfolio of data collections responsive to the Violent Crime Control and Law Enforcement Act of 1994. Dr. Hickman has also written other government reports, including "Law Enforcement Management and Administrative Statistics, 2000: Data for Individual State and Local Agencies with 100 or More Officers" and "Police Departments in Large Cities, 1990-2000." Further, Dr. Hickman has presented his articles, research, and statistical analyses at various conferences, including at annual meetings of the American Society of Criminology, the Western Society of Criminology, and the American Society of Crime Laboratory Directors.

## II.      Admissibility

In her *Daubert* motion, Obrycka seeks to exclude three of Dr. Hickman's opinions as inflammatory and unfounded. These opinions include: (1) the Whitman expert memorandum and an article upon which Dr. Whitman relies are examples of junk science in which plausible theories are advanced under the veil of scientific analyses to confuse or take advantage of lay persons, particularly jurors; (2) the DePaul Journal of Social Justice article upon which Dr. Whitman relies "would not survive a peer-reviewed process at a decent academic journal in the fields of criminology and criminal justice;" and (3) Dr. Hickman was "surprised" that Dr. Whitman proceeded with his analysis based on data supplied by counsel and that "an ethical response would've been to refuse the work because the data by themselves do not support any analysis...."

First, Dr. Hickman's "junk science" opinion concerning Dr. Whitman's expert memorandum and the article upon which Dr. Whitman relied, namely, "The Use of Statistical Evidence to Address Police Supervisory and Disciplinary Practices: The Chicago Police Department's Broken System." 1 DePaul Journal for Social Justice 251 (2008), written by University of Chicago Law Professor Craig B. Futterman, J.D., lacks a reliable foundation. *See Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 760 (7th Cir. 2010) (under *Daubert,* "district court was required to 'ensure that the expert testimony at issue both rests on a reliable foundation and is relevant to the task at hand.'") (citation omitted). In particular, in forming this opinion, Dr. Hickman relies upon Professor of Physics Robert L. Park's book entitled Voodoo Science: The Road from Foolishness to Fraud (2000), in which Dr. Park unequivocally admits in the preface of his book that "I have no interest in writing a scholarly book to be read only by other scholars." The Court therefore grants this aspect of Obrycka's *Daubert* motion.[2]

Next, based on Dr. Hickman's own experience in writing articles for scientific journals, as well as conducting peer review for scientific journals, Dr. Hickman is qualified to opine that Professor Futterman's article in the DePaul Journal of Social Justice would not survive a peer-reviewed process. *See Gayton v. McCoy,* 593 F.3d 610, 616 (7th Cir. 2010) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.") (citation omitted). Therefore, the Court denies Obrycka's motion in this respect.

---

[2] The Court has already addressed Defendant's arguments concerning Dr. Whitman's expertise and methodology in the context of Defendant's *Daubert* motion at which time the Court concluded that Dr. Whitman's quantitative background provided him with a sufficient foundation to present his data analyses and that his analyses were based on reliable data. *See Obrycka v. City of Chicago,* No. 07 C 2372, 2011 WL 2600554, at *7-9 (N.D. Ill. June 29, 2011)

Nevertheless, Dr. Hickman's comment which infers the DePaul Journal of Social Science is not "a decent academic journal" is inadmissible because it is not grounded on any methods, procedure, or facts, but instead is an unfounded subjective belief.  *See Daubert,* 509 U.S. at 590; *Lewis,* 561 F.3d at 705.

Finally, Dr. Hickman's opinion that an ethical response would have been for Dr. Whitman to refuse counsel's request to be Plaintiff's statistical expert is inadmissible because Dr. Hickman is not qualified as an expert in ethics and integrity of statisticians.  Instead, Dr. Hickman's area of ethics expertise is in the context of police integrity.  *See Gayton*, 593 F.3d at 617 ("The question we must ask is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for [him] to answer a specific question.").  Therefore, the Court grants Obrycka's motion to bar Dr. Hickman's opinion concerning Dr. Whitman's ethics.

## CONCLUSION

For the these reasons, the Court grants in part and denies in part Plaintiff's motion to exclude certain opinions of Defendants' expert Dr. Matthew J. Hickman pursuant to Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993).

**Date:** September 7, 2012

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**

8