**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KAROLINA OBRYCKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  07 C 2372 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO and ANTHONY | ) | |
| ABBATE, JR., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Pursuant to Federal Rules of Civil Procedure 60(b)(5) and (b)(6), the parties in this

lawsuit filed a joint motion for relief from the November 13, 2012 judgment in which a jury

found in favor of Plaintiff Karolina Obrycka.  On December 7, 2012, the Court held a motion

hearing on the parties' joint motion and granted the University of Chicago Mandel Legal Aid

Clinic's and Northwestern University School of Law MacArthur Justice Center's motion to

intervene in order to file an amicus brief.[1]  For the following reasons, the Court, in its discretion,

denies the parties' joint motion to vacate.

**BACKGROUND**

On April 30, 2007, Plaintiff Karolina Obrycka brought a Complaint alleging that

Defendants City of Chicago and former Chicago police officer Anthony Abbate, Jr. violated her

constitutional rights in relation to an incident on February 19, 2007 at Jesse's Shortstop Inn, a

---

[1] Although Defendant City of Chicago objected to the motion to intervene, Plaintiff had
no objection to allowing the Intervenors to file an amicus brief.

bar located in Chicago, Illinois, and the subsequent investigation into that incident.[2]  On that

night, Abbate beat Obrycka at Jesse's Shortstop Inn, and the beating was captured on videotape.

On September 10, 2007, the Court granted Defendant Abbate's motion to stay because the Cook

County State's Attorney charged him with aggravated battery based on his February 19, 2007

beating of Obrycka.  After a bench trial, a Circuit Court of Cook County judge found Abbate

guilty of aggravated battery and sentenced him to two years of probation.  The Court then lifted

the stay in this case.

Meanwhile, the parties engaged in extensive discovery, especially in light of Plaintiff's

claim pursuant to *Monell v. Department of Soc. Servs. of New York,* 436 U.S. 658, 98 S.Ct. 2018,

56 L.Ed.2d 611 (1978), which contained serious allegations concerning the Chicago Police

Department ("CPD") and the Office of Professional Standards.  Furthermore, the parties filed

multiple motions to compel.  On February 23, 2012, the Court granted in part and denied in part

the City's motion for partial summary judgment.  (R. 434.)  Prior to trial, the Court conducted

numerous hearings pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct.

2786, 125 L.Ed.2d 469 (1993), and issued six *Daubert* orders.  (R. 317, 324, 341, 344, 351, 552,

563.)  The parties filed over twenty-five motions in limine, including omnibus motions that

contained up to eighteen separate motions in limine.  (R. 457-71, 475-89, 586.)  The Court also

held two lengthy final pre-trial conferences because the parties hotly contested the vast majority

of the forty-five jury instructions.

---

[2]  On April 30, 2009, the parties stipulated to dismiss all claims of Plaintiffs Marcin Kolodziej and Eva Cepiaszuk against all Defendants.  (R. 197.)   Likewise, the parties stipulated to dismiss Defendants Patti Chiriboga and Gary Ortiz from this lawsuit on September 20, 2010 and December 2, 2009, respectively.   (R. 262, 241.)

During and after the pre-trial motions and hearings, Plaintiff voluntarily dismissed her *Monell* claim based on equal protection and access to the courts, her conspiracy claim brought pursuant to 42 U.S.C. § 1985(2), and her 42 U.S.C. § 1983 conspiracy claims based on the equal protection and due process clauses of the Fourteenth Amendment. At the close of evidence, the Court granted Plaintiff's motion to voluntarily dismiss her claim that Defendant Abbate entered into a conspiracy with others to violate her Fourteenth Amendment right to bodily integrity, her *Monell* claim that the City had an official policy that was the moving force behind the conspiracy to violate her Fourteenth Amendment right to bodily integrity, and her claim for indemnification. The following constitutional claims went to the jury: (1) that Defendant City of Chicago had an official policy, also known as a widespread custom or practice, that was the moving force behind Defendant Abbate's conduct in the bar when he physically beat Obrycka in violation of her Fourteenth Amendment substantive due process right to bodily integrity; and (2) that after the physical assault in the bar, Defendant Abbate and others entered into a conspiracy to violate Obrycka's constitutional right to freedom of speech as guaranteed by the First Amendment. After an approximately two and a half week jury trial, on November 13, 2012, the jury returned a verdict in favor of Plaintiff Karolina Obrycka on both of her claims and awarded her $850,000 in compensatory damages.

## LEGAL STANDARD

"Vacatur is a remedy rooted in equity." *Ameritech Corp. v. International Bhd. of Elec. Workers, Local 21,* 543 F.3d 414, 419 (7th Cir. 2008). Pursuant to Rule 60(b), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has

been reversed or vacated; [] applying it prospectively is no longer equitable; or [] any other reason that justifies relief." Fed.R.Civ.P. 60(b)(5), (b)(6). "Relief from a final judgment may be granted pursuant to Rule 60(b) under exceptional circumstances, and we have characterized the district court's considerable latitude in making its decision as 'discretion piled on discretion.'" *Wehrs v. Wells,* 688 F.3d 886, 890 (7th Cir. 2012) (quoting *Swaim v. Moltan Co.,* 73 F.3d 711, 722 (7th Cir. 1996)).[3]

When determining whether to vacate a judgment, the Court must exercise its equitable discretion balancing the interests of both the parties and the public. *See U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18, 26-27, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); *Matter of Memorial Hosp. of Iowa County, Inc.,* 862 F.2d 1299, 1302 (7th Cir. 1988); *Mayes v. City of Hammond, Ind.,* 631 F.Supp.2d 1082, 1085 (N.D. Ind. 2008). Private interests of the parties include the plaintiff's economic situation while awaiting resolution of the matter and the municipality's legal, political, and financial restraints. *See Mayes,* 631 F.Supp.2d at 1088. Public interests include the effect that vacatur will have on the judgment's precedential value and issue preclusion (collateral estoppel), as well as issues related to judicial economy and integrity. *See Bonner Mall,* 513 U.S. at 26-27 ("Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.")

---

[3] The City relies upon *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.,* 481 F.3d 1002 (7th Cir. 2007), for the proposition that the "exceptional circumstances" test is not appropriate under the circumstances. The City's argument is misplaced because the *Marseilles* court held that district courts would not be "cabined" by the exceptional circumstances test for cases on remand from the appellate court. *See id.* at 1003. Here, there has been no such remand – unlike the procedural posture in *Mayes v. City of Hammond, Ind.,* 631 F.Supp.2d 1082, 1085 (N.D. Ind. 2008).

4

(citation omitted); *Memorial Hosp.*, 862 F.2d at 1302 ("Judges must have at heart the interests of other litigants in future cases, and hold them equal in weight with the interests of today's."); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 90 C 6933, 2002 WL 1484488, at *1 (N.D. Ill. July 10, 2002) (Easterbrook, J.) ("the district court's judgment is the product of a substantial investment of public resources and may have value to third parties.").

## ANALYSIS

Although the parties' original motion asked the Court to vacate the judgment as a condition precedent to a post-judgment settlement, at the motion hearing on December 7, 2012, the City explained that it is no longer seeking vacatur as a condition precedent to paying Obrycka compensatory damages in the amount of $850,000, plus costs and reasonable attorney's fees. The City also maintains that it will forego its right to appeal pursuant to the parties' post-judgment settlement. Accordingly, there are no longer any private concerns implicated by the parties' motion for vacatur, and thus the Court turns to the public interest concerns.

## I. Precedential Value

First, the City argues that vacatur is appropriate under the circumstances because the final judgment has little precedential value. As the Seventh Circuit teaches, however, district court "decisions have persuasive force as precedent that may save other judges and litigants time in future cases" and "[s]ome of this force would remain as long as the court's opinion were available to read; it does not vanish on vacatur, although such an order clouds and diminishes the significance of the holding." *Memorial Hosp.*, 862 F.2d at 1302; *see also Bonner Mall*, 513 U.S. at 26 ("Judicial precedents are presumptively correct and valuable to the legal community as a whole.") (citation omitted); *see, e.g., Nilssen v. Motorola, Inc.*, Nos. 93 C 6333 & 96 C 5571,

2002 WL 31369410, at *4 (N.D. Ill. Oct. 2, 2002).

Here, the judgment involves a novel situation in which the *Monell* claim was the driving force behind Plaintiff's lawsuit and formed the centerpiece at trial. Defendant Abbate's beating of Obrycka was captured on videotape and widely disseminated on television and the Internet. The videotape revealed Defendant Abbate, who was significantly larger than Obrycka, repeatedly punching and kicking the petite Obrycka. The videotape also captured the actions and words of the Chicago police officers who responded to the scene of the crime and recorded the information Obrycka gave to these officers about Abbate. The extensive media coverage of the February 2007 beating and this lawsuit ranged from criticisms of former Police Superintendent Phillip Cline's handling of the February 2007 incident (*see* R. 514, Ex. C, WBBM-TV 4/02/09 broadcast transcript), to coverage concerning the present motion to vacate.

Moreover, at the October 18, 2012 pre-trial conference hearing three days before the jury trial commenced, when the Court asked the City's counsel one last time if settlement was a possibility based on Plaintiff's low amount of itemized damages, counsel declined to participate in a settlement conference because the "case is a matter of principle." Indeed, there is a social value to the judgment, especially because of the constitutional issues involved. *See Memorial Hosp.*, 862 F.2d at 1302; *see also Evans v. Mullins,* 130 F.Supp.2d 774, 777 (W.D.Va. 2001) ("The social value of this judgment, in particular, is amplified by the nature of the case as a constitutional claim.") (citing *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 776, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ("The Constitution often protects interests broader than those of the party seeking their vindication.")).

6

Therefore, although the judgment's precedent is not binding, it has a social value to the judicial system and public at large.  *See Clark Equip. Co. v. Lift Parts Mfg. Co. Inc.,* 972 F.2d 817, 820 (7th Cir. 1992) ("opinions have value to the judicial system, even if they cannot be appealed" and "while not binding on anyone, [the district court's] reasoning may be helpful to other courts to the extent that it is persuasive."); *see also Union Oil Co. of Cal. v. Leavell,* 220 F.3d 562, 568 (7th Cir. 2000) ("Judicial proceedings are public rather than private property and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible.") (internal citations omitted).  Accordingly, the judgment's precedential value weighs against granting the parties' motion to vacate the judgment.  *See Memorial Hosp.*, 862 F.2d at 1302 ("If parties want to avoid stare decisis and preclusive effects, they need only settle before the district court renders a decision.").

## II.    Issue Preclusion

Next, the City argues that "the likelihood that the judgment against the City in this case would have any preclusive effect in any other case is minimal."  (R. 687, City's Opening Brief, at 5.)  Indeed, when deciding whether vacatur is appropriate, the Court must weigh the public interest of the preclusive benefits for third parties.  *See Memorial Hosp.*, 862 F.2d at 1302 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).  In other words, when weighing the public interests in the context of issue preclusion, if the preclusive effect is negligible, vacatur may be appropriate.  *See Mayes,* 631 F.Supp.2d at 1089 ("potential preclusive effect of the judgment is so unlikely that it does not counsel against vacatur"); *see, e.g., Orlowski v. Eriksen,* No. 2010 WL 2401938, at *2 (N.D. Ill. June 10, 2010).

7

Issue "[p]reclusion applies if (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action." *Dexia Credit Local v. Rogan,* 629 F.3d 612, 628 (7th Cir. 2010). At issue in the present motion is the third element, namely, whether the jury's determination of the issue was essential to the final judgment. Specifically, the City argues that the basis of the jury's verdict is unclear because Plaintiff presented evidence of two potential widespread customs or practices (or both) that could underlie the jury's verdict. *See Melendez v. Illinois Bell Tel. Co.,* 79 F.3d 661, 670 (7th Cir. 1996) ("The general verdict of a jury can only bind the judge with respect to issues that were essential to the jury's decision."); *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 907 (7th Cir. 1990) ("because the consent judgment is ambiguous and the intent of the parties cannot be gleaned definitively from the entirety of the proceedings, summary judgment should not have been granted on the basis of collateral estoppel"); *Mayes,* 631 F.Supp.2d at 1091("Where a judgment is ambiguous and it is not possible to definitively determine what issues were decided, issue preclusion cannot apply.").

At trial, the jury heard evidence concerning both a code of silence within the CPD and a widespread custom or practice of failing to adequately investigate and/or discipline officers. Specifically, Plaintiff's counsel presented evidence that Obrycka and Jesse Shortstop Inn's owner, Marcin Kolodziej, told the officers responding to the February 19, 2007 incident – Officers Peter Masheimer and Jerry Knickrehm – that Abbate was a police officer and that the beating was captured on videotape, yet Officers Masheimer and Knickrehm did not put these details in their police report of the incident. Also at trial, Plaintiff presented the videotape of the

beating and the aftermath of the beating, which corroborated her statements to Officers

Masheimer and Knickrehm.  Trial evidence further revealed that within hours of the beating,

Defendant Abbate made countless telephone calls, including calls to his partner at the 20th

District, Joseph Boroff.  Officer Boroff, in turn, called numerous other Chicago police officers,

including Officer Masheimer's partner in the 25th District.  Further, the jury heard evidence

regarding the investigations into the Abbate incident, including investigations into Officers

Masheimer's and Knickrehm's conduct surrounding the reporting of the February 19, 2007

incident.  Obrycka also presented evidence regarding the CPD's effort to locate and arrest

Defendant Abbate after the beating and that Abbate was originally charged with a misdemeanor

battery and not a felony.

Due to Plaintiff's evidence of both a code of silence and a widespread custom or practice

that the City does not adequately investigate and/or discipline its officers, the jury instruction for

Plaintiff's *Monell* claim listed these two widespread customs or practices upon which the jury

could rely.  The relevant instruction reads in its entirety:

> Plaintiff claims that Defendant City of Chicago had an official policy, also
> known as a widespread custom or practice, that was the moving force behind
> Defendant Abbate's conduct in the bar when he physically beat Plaintiff in
> violation of Plaintiff's Fourteenth Amendment substantive due process right to
> bodily integrity.

> To succeed on this claim, Plaintiff must prove each of the following things
> by a preponderance of the evidence:

> 1.     That Defendant Abbate beat Plaintiff in the bar;

> 2.     That during the relevant time period, the City of Chicago had a
>        widespread custom or practice of failing to adequately investigate
>        and/or discipline its officers and/or of a police code of silence;

> 3.     That either or both of these customs or practices constituted an exercise of

power without reasonable justification in a manner that shocks the
conscience;

4.     That either or both of these customs or practices was the moving force of
       Defendant Abbate beating Plaintiff, depriving Plaintiff of her Fourteenth
       Amendment substantive due process right to bodily integrity; and

5.     That Plaintiff suffered non-trivial harm to her person.

If you find that Plaintiff has proven one or both customs or practices as described
in element #2, you must find that at least one of the customs or practices proven in
element #2 is the same custom or practice proven in elements #3 and #4.

If you find that Plaintiff has proved each of these things by a
preponderance of the evidence, then you should find for Plaintiff, and go on to
consider the question of damages.

If, on the other hand, you find that Plaintiff did not prove any one of these
things by a preponderance of the evidence, then you should find for Defendant,
and you will not consider the question of damages.

(R. 681, Jury Inst., at 26-27.)  In addition, the jury verdict did not include a special interrogatory

for the jury to identify the specific widespread customs or practices it unanimously found that

Obrycka had proven.  The jury had a choice of deciding whether the code of silence was the

moving force behind the constitutional violation or if the City's widespread custom or practice of

failing to adequately investigate and/or discipline its police officers was the moving force – or

both.  It is unclear, however, which custom or practice supports the jury's general verdict.

Furthermore, the verdict and judgment are based on the unique facts of this case.  The case

involved facts surrounding an event in February 2007.  The evidence focused heavily on the

actions and inactions of several CPD officers and the policies and customs at that time.

Although the Court recognizes that other courts in future litigation will ultimately decide

the preclusive effect of this judgment, *see H–D Michigan, Inc. v. Top Quality Serv., Inc.,* 496

F.3d 755, 760 (7th Cir. 2007), because the basis of the jury's general verdict is ambiguous and

10

because this case was highly fact specific, the issue preclusion public interest factor weighs in favor of vacatur. *See Mayes,* 631 F.Supp.2d at 1091. Nevertheless, as discussed in detail below, issues of judicial economy and integrity, along with the public's interest in the precedential value of the judgment discussed above, outweigh this public interest factor.

## III.    Judicial Economy and Integrity

The public interests of judicial economy and integrity strongly weigh in favor of letting the judgment against the City stand. *See Memorial Hosp.*, 862 F.3d at 1302; *see also Allen-Bradley Co., LLC v. Kollmorgen Corp.,* 199 F.R.D. 316, 319 (E.D. Wis. 2001) ("in the Seventh Circuit, great weight has been accorded the countervailing interest in judicial economy"); *cf. Pierce v. United Mine Workers of Am. Welfare & Ret. Fund,* 770 F.2d 449, 452 (6th Cir. 1985) ("The interests of finality of judgments and judicial economy outweigh the value of giving a party a second bite of the apple.").

The City argues that vacatur would conserve judicial resources by "providing certainty that the judgment will not engender additional and substantial collateral estoppel litigation." (R. 703, City's Resp. Brief, at 7.) As the City persuasively argued, however, the likelihood that the judgment in this matter would have any preclusive effect in future cases is likely minimal. Further, although settling a lawsuit provides for judicial economies, here the City refused to settle and took this case to trial, as it had the right to do. As such, an enormous amount of judicial resources were dedicated to the resolution of this lawsuit, which lasted approximately six years. Specifically, this contentious case involved not only the numerous hard-fought pre-trial motions and orders, but also a thirteen-day jury trial at which a jury listened to the evidence and arguments, and then carefully deliberated to reach its verdict. Hence, the judicial resources

11

expended in this litigation weigh against vacating the judgment. *See, e.g., Aetna Cas. & Sur. Co. v. Home Ins. Co.,* 882 F.Supp. 1355, 1358 (S.D.N.Y. 1995).

Similarly, granting the parties' post-judgment motion to vacate would serve as a disincentive for other parties to settle lawsuits prior to trial. *See Bonner Mall,* 513 U.S. at 27-28 ("while the availability of vacatur may facilitate settlement after the judgment under review has been rendered and certiorari granted (or appeal filed), it may *deter* settlement at an earlier stage") (emphasis in original); *Evans,* 130 F.Supp.2d at 776 ("if post-judgment vacatur were a readily available option, parties would be less likely to settle at earlier stages of the controversy"). As the Supreme Court explains:

> Some litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court, or in the court of appeals, if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur. And the judicial economies achieved by settlement at the district-court level are ordinarily much more extensive than those achieved by settlement on appeal.

*Bonner Mall,* 513 U.S. at 28.

Finally, the public has an interest in the integrity and orderly operation of the justice system. *See Bonner Mall,* 513 U.S. at 27; *see also Evans,* 130 F.Supp.2d at 777 ("Society would not be served by the impression that the court is beholden to the will of the parties"). As the Seventh Circuit explains:

> Although a jury verdict alone has little or no precedential value, the integrity of all decisions in this court would be weakened by allowing unsuccessful parties to erase unfavorable legal outcomes.... The interests of litigants in general [] lie with the orderly operation of a system of justice, one in which the conclusions of litigation are recorded and thus preserved for the future, one in which slightly higher costs in today's case may reduce the trouble encountered by litigants and judges tomorrow.

*Memorial Hosp.,* 862 F.2d at 1302-03.

12

This was a highly-publicized case involving a considerable amount of public resources, including taxes paid by the people of the City of Chicago to defend this lawsuit. This case touched on the public interest of whether the City has a widespread custom or practice of failing to adequately investigate and/or discipline its officers and whether there is a police code of silence. The City strategically decided to proceed to a jury trial – despite Obrycka's willingness to settle for a reasonable amount of compensatory damages – knowing that an adverse judgment was a risk. Meanwhile, Obrycka waited approximately six years for her day in court, yet the City wishes to vacate the judgment due to what appears to be its fear of future *Monell* litigation. The judgment in this case has ramifications for society at large, not just the City's litigation strategies. Under these circumstances, vacatur would not serve the public interest.

## CONCLUSION

For the reasons stated above, the Court, in its discretion, denies the parties' joint motion to vacate the November 13, 2012 judgment in this matter. The verdict and the judgment both stand.

**Date:** December 20, 2012

ENTERED

AMY J. ST. EVE
United States District Court Judge

13