**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KAROLINA OBRYCKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 2372 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO and ANTHONY ABBATE, JR., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On November 13, 2012, a jury found in favor of Plaintiff Karolina Obrycka after an approximately two and a half week jury trial in this lawsuit brought pursuant to 42 U.S.C. § 1983. During this litigation, which lasted well over five years, Plaintiff was represented by attorneys at the law firm of Ekl, Williams, and Provenzale, LLC (hereinafter "the Ekl law firm") and Gustavo Munoz. On January 22, 2013, Defendant City of Chicago and the Ekl law firm settled their attorney's fee dispute. Before the Court is Mr. Munoz's fee petition pursuant to 42 U.S.C. § 1988(b).[1] For the following reasons, the Court, in its discretion, awards Mr. Munoz $148,955.00 in attorney's fees.

## LEGAL STANDARD

The prevailing party in a Section 1983 action may recover reasonable attorney's fees. *See* 42 U.S.C. § 1988; *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). Here, the City

---

[1] On April 4, 2013, the Court granted Mr. Munoz's motion for leave to file a reply brief that was due on or before April 15, 2013. To date, Mr. Munoz has failed to file any such reply brief.

does not dispute that Plaintiff is the prevailing party in this lawsuit. To determine reasonable attorney's fees, district courts use the lodestar method by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Johnson,* 668 F.3d at 929; *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 639 (7th Cir. 2011). "There is a strong presumption that the lodestar calculation yields a reasonable attorney's fee award." *Pickett,* 664 F.3d at 639; *see also Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010) ("loadstar method is readily administrable" and "objective"). "Once the petitioning party provides evidence of the proposed fees' reasonableness, the burden shifts to the other party to demonstrate the award's unreasonableness." *Wachovia Sec., LLC v. Banco Panamericano, Inc.,* 674 F.3d 743, 759 (7th Cir. 2012). The Seventh Circuit's review of an attorney's fees award involves a highly deferential standard because "the district court has a more complete picture of the case as a whole; the issues tend to be factual matters for which appellate review is limited; the accuracy of the ultimate decision is not likely to be enhanced by frequent and detailed appellate review; and it would be wasteful to engage in a 'second major litigation' over attorneys' fees." *Lock Realty Corp. IX v. U.S. Health, LP,* 707 F.3d 764, 773 (7th Cir. 2013) (citing *Pickett,* 664 F.3d at 639).

## ANALYSIS

**I.     Reasonable Hourly Rate**

The Seventh Circuit has defined reasonable hourly rate as one that is "derived from the market rate for the services rendered." *Pickett,* 664 F.3d at 640. Under this standard, courts presume "that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Id.; see also Broaddus v. Shields,* 665 F.3d 846, 859-60 (7th Cir. 2011).

Nevertheless, as the Seventh Circuit teaches, "[r]ecognizing the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements, we have advised district courts to rely on the 'next best evidence' of an attorney's market rate, namely 'evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases.'" *Pickett,* 664 F.3d at 640 (quoting *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 555 (7th Cir. 1999)). "The fee applicant bears the burden of 'produc[ing] satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). "If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth 'a good reason why a lower rate is essential.'" *Id.* (quotation omitted); *see also Gautreaux v. Chicago Hous. Auth.,* 491 F.3d 649, 659-60 (7th Cir. 2007) ("once an attorney provides evidence establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded.") (citation omitted).

Here, Mr. Munoz maintains that his rate of $350.00 an hour is reasonable based on his experience and qualifications. *See Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.,* 570 F.3d 890, 905 (7th Cir. 2009) ("reasonableness of an attorney's billing rate depends on the experience and qualifications of the professional."). In support of this hourly rate, Mr. Munoz attaches his affidavit in which he avers that he graduated from the University of Illinois College of Law in 1984 and that from 1984 until 1991 he was an Assistant State's Attorney with the Cook County State's Attorney's Office where he tried approximately 34 felony cases to juries. (R. 740-1, Munoz Aff. ¶¶ 5, 6.) Mr. Munoz further avers that from

3

January 1991 until April 1998, he was an attorney with a private law firm and that he represented a large number of Chicago police officers before the Chicago Police Board. (*Id.* ¶ 7.) In addition, while at the private firm, he represented police officers from various municipal and suburban police departments who were charged with internal department rules violations and charges of misconduct. (*Id.*) Many of these cases involved civil rights violations. (*Id.*)

In 1998, Mr. Munoz opened his own law firm. (*Id.* ¶ 8.) He avers that his private practice typically consists of contingent fee matters such as personal injury, worker's compensation, medical malpractice, and flat fee criminal defense matters. (*Id.*) Due to the nature of his work, he states that he does not charge his private clients an hourly rate. (*Id.*) Mr. Munoz also maintains that since 1999, he has been the Village Attorney and Prosecutor for the Village of Summit-Argo, Illinois and that in this position he frequently investigates allegations of police misconduct, alleged use of excessive force, and alleged civil rights violations. (*Id.* ¶ 11.) Also since he started his law firm 1998, Mr. Munoz has represented clients against numerous municipalities, including police officers. (*Id.* ¶ 10.)

Thus, although Mr. Munoz has not focused on civil rights litigation during the entire 29 years he has practiced law, he has had some experience in civil rights work prior to his representation of Karolina Obrycka in this matter. In his fee petition, Mr. Munoz maintains that his rate of $350.00 is reasonable because courts in this district have awarded comparable hourly rates for lawyers who have limited civil rights experience, but nonetheless have significant litigation experience. *See, e.g., Jimenez v. City of Chicago,* No. 09 C 8081, 2012 WL 5512266, at *3-5 (N.D. Ill. Nov. 14, 2012) ($325.00 an hour reasonable rate for 1993 school graduate with nine years civil litigation experience, but limited civil rights experience); *Wells v. City of*

4

Case: 1:07-cv-02372 Document #: 751 Filed: 04/23/13 Page 5 of 10 PageID #:11061

*Chicago*, ___ F.Supp.2d ___, 2013 WL 622942, at *3-4 (N.D. Ill. Feb. 20, 2013) ($325.00 per hour reasonable for attorneys with 15-20 years experience); *Richardson v. City of Chicago,* No. 08 C 4824, 2012 WL 6185867 (N.D. Ill. Nov. 20, 2012) (hourly rate of $400.00 reasonable for attorney with 15 years of overall experience and seven years of extensive civil rights work). Mr. Munoz, however, does not provide the Court with third-party affidavits showing comparable attorneys' billing rates. *See Pickett,* 664 F.3d at 640 ("we have indicated a preference for third party affidavits that attest to the billing rates of comparable attorneys").

In any event, the City argues that an hourly rate of $175.00 is reasonable because the City estimates that the Village of Summit paid Mr. Munoz $150.00 per hour for his work as the Village Attorney, and thus $150.00 is Mr. Munoz's "actual billing rate." *Pickett,* 664 F.3d at 640; *Denius v. Dunlap,* 330 F.3d 919, 930 (7th Cir. 2003). The hourly rate of $175.00 is an unreasonably low rate considering that Mr. Munoz has been a civil litigator and prosecutor for many years and that he bills most of his clients on a contingent basis. *See Pickett,* 664 F.3d at 640; *Jimenez,* 2012 WL 5512266, at *3. The Court, however, also recognizes that Mr. Munoz's experience in civil rights litigation is not as extensive as the examples he provides above. Indeed, courts in this district have approved the hourly rate range of $285.00 to $310.00 an hour for trial attorneys with similar civil rights litigation experience as Mr. Munoz. *See Blackwell v. Kalinowski,* No. 08 C 7257, 2012 WL 469962, at *5 (N.D. Ill. Feb. 13, 2012); *Ragland v. Ortiz,* No. 08 C 6157, 2012 WL 4060310, at *3 (N.D. Ill. Sept. 14, 2012); *Alcazar-Anselmo v. City of Chicago,* No. 07 C 5246, 2011 WL 3236024, at *8 (N.D. Ill. July 27, 2011); *Bronzino v. Sheldon,* No. 09 C 1048 (N.D. Ill. Apr. 17, 2013). Based on these similar hourly rates, Mr. Munoz's overall qualifications and experience, and his work on this matter — as discussed in

5

detail below — the Court, it its discretion, reduces Mr. Munoz's hourly rate to $310.00 an hour as appropriate under the circumstances. *See Pickett,* 664 F.3d at 640 ("If a fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate.").

Mr. Munoz also relies on the Laffey Matrix to support his hourly rate of $350.00. "The Laffey Matrix is a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States Attorney's Office for the District of Columbia to be used in fee-shifting cases." *Pickett,* 664 F.3d at 649. Although some courts in this district have referred to the Laffey Matrix when determining the reasonableness of hourly rates, the Seventh Circuit has not adopted this approach. *See id.* at 649-50. Under the present circumstances, the Laffey-Matrix does not provide guidance to the Court's assessment of Mr. Munoz's reasonable hourly rate because the matrix only sets forth years of experience and not years of experience in a specific legal expertise.[2] In short, the Laffey Matrix does not take into account an individual attorney's ability, experience, or reputation, *see id.* at 641, and thus does not lend support under the circumstances.

## II.     Hours Reasonably Expended

Next, Mr. Munoz provides the Court with 1,344 separate entries of the various tasks and time spent on this lawsuit starting in February 2007 and ending in December 2012. The City maintains that Mr. Munoz not only bills compensable and non-compensable tasks together in single entries, but many of his entries are vague and not clearly documented. Further, the City maintains that many of Mr. Munoz's hours duplicate the Ekl firm's efforts. The Court agrees.

---

[2] http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf

The Seventh Circuit lends guidance under such circumstances:

> As to the reasonableness of the hours expended, when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage. Whichever option the district court chooses, it is required to "provide a concise but clear explanation of its reasons for the fee award" that is sufficient to permit appellate review.

*Harper v. City of Chicago Heights,* 223 F.3d 593, 605 (7th Cir. 2000) (citation omitted); *see also Tomazzoli v. Sheedy,* 804 F.2d 93, 98 (7th Cir. 1986) ("it is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application."). Indeed, the Supreme Court has cautioned that "[a] request for attorney's fees should not result in a second major litigation." *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Because of the voluminous time records at issue in Mr. Munoz's fee petition, the Court takes a hybrid approach, namely, striking the entries that are clearly not recoverable and then reducing the hours by a reasonable percentage due to the Ekl law firm's lead role in this lawsuit. *See, e.g., Young v. Verizon's Bell Atlantic Cash Balance Plan,* 783 F.Supp.2d 1031, 1039-40 (N.D. Ill. 2011).

### A. Specific Entries

As to the specific hours Mr. Munoz's billed in his fee petition, the Court reduces 142.5 hours for clerical tasks, including filing, printing, transporting witnesses, data entry, reading newspaper articles, and scheduling. *See Spegon,* 175 F.3d at 553 ("the court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel 'on tasks that are easily delegable to non-professional assistance.'") (citation omitted). The Court further excludes 46 hours that Mr. Munoz billed for representing Obrycka as a witness in Anthony Abbate's criminal trial because these hours were not

7

reasonably expended in the present federal civil rights litigation. *See Hensley,* 461 U.S. at 433; *Wells,* 2013 WL 622942, at * 9. The Court further reduces Mr. Munoz's hours by 24.50 in which he spent an excessive amount of time on simple tasks, such as billing 7.75 hours for travel and attendance at two depositions that lasted 1.5 hours. *See Hensley,* 462 U.S. at 433. Mr. Munoz's billing records also include approximately 730 entries for the receipt of correspondence from the parties or the district court, which is not only clerical work, but time that attorneys did not normally bill paying clients. *See Spegon,* 175 F.3d at 553. The Court thus reduces an additional 52.5 hours for receiving correspondence. Last, there are approximately 454 entries that Mr. Munoz describes as communicating with the Ekl law firm either via phone, email, or in person. Although Mr. Munoz was the liaison or "main attorney contact" to Karolina Obrycka, communicating with the Ekl law firm 454 times over a five and a half year period is excessive, and thus the Court reduces 18.5 hours in this regard. *See Johnson,* 668 F.3d at 931 (non-prevailing party "is not required to pay for hours that are 'excessive, redundant, or otherwise unnecessary'") (quotation omitted.). Accordingly, the Court deducts 284 hours from the 1,245 hours that Mr. Munoz seeks leaving a total of 961 hours. The Court now turns to Mr. Munoz's role in this lawsuit and the hours he bills that duplicate the Ekl law firm's efforts.

   **B.**  **Mr. Munoz's Role in this Lawsuit**

During this lawsuit, it was clear that Mr. Munoz was Karolina Obrycka's "main attorney contact" and that Mr. Munoz brought the Ekl law firm into this lawsuit as co-counsel. It is also clear that the Ekl law firm did the heavy lifting in this matter, although Mr. Munoz contributed to this lawsuit throughout the five and a half years he was co-counsel. Mr. Munoz, for example, attended numerous status and motions hearings, but rarely made any substantive legal arguments

to the Court. Instead, an Ekl lawyer, most often Patrick Provenzale, argued motions and issues before the Court. Furthermore, the Ekl law firm drafted and filed the vast majority of motions and legal memoranda in this case, which included motions in limine, responses to summary judgment, motions to compel, and *Daubert* motions, among other filings. In sum, the Ekl lawyers were far more involved in this litigation than Mr. Munoz.

The Court recognizes that Mr. Munoz prepared for and attended depositions and trial, examined witnesses at trial and conducted four depositions, and attended client conferences. Also, Mr. Munoz was always professional and a pleasure to have in court. That being said — although there will always be an overlap of efforts when more than one law firm represents a party — due to his level of participation, many of the hours in Mr. Munoz's fee petition are redundant to the Ekl law firm's hours reasonably extended in this matter. *See Hensley,* 461 U.S. at 434. The Court therefore reduces Mr. Munoz's hours by 50 percent as a reasonable reduction due to the Ekl law firm's lead role in this lawsuit and the resultant redundancy of Mr. Munoz's hours. *See, e.g., Young,* 783 F.Supp.2d at 1031; *Hackett v. Xerox Corp. Long-Term Disability Income Plan,* 355 F.Supp.2d 931, 937 (N.D. Ill. 2005). As such, the total amount of the hours recoverable equals 480.5. At Mr. Munoz's hourly rate of $310.00, the Court awards Mr. Munoz $148,955.00 in attorney's fees.

On a final note, the Court acknowledges that the Ekl law firm, Mr. Munoz, and Karolina Obrycka entered into a joint contingent fee agreement in 2007. The parties' breach of contract dispute regarding this agreement is not before the Court, but is being litigated in the Circuit Court of Cook County, Chancery Division. The state court litigation, however, in no way interferes with the Court's determination of Mr. Munoz's Section 1988(b) fee petition.

## CONCLUSION

For these reasons, the Court awards Mr. Munoz $148,955.00 in attorney's fees pursuant to 42 U.S.C. § 1988(b).

**Date:** April 23, 2013

            **ENTERED**

            _____
            **AMY J. STUEVE**
            **United States District Court Judge**